**Wilmer L. LYLE, Plaintiff, Appellant,**

v.

**BANGOR & AROOSTOOK RAILROAD COMPANY, Defendant, Appellee.**

**No. 5087.**

United States Court of Appeals
First Circuit.

Heard June 5, 1956.

Decided Oct. 31, 1956.

Harry Stern, Bangor, Me., for appellant.

Scott Brown, Houlton, Me., for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

WOODBURY, Circuit Judge.

The plaintiff in an action brought under the Federal Employers' Liability Act[1] has taken this appeal from a judgment summarily entered for the defendant by the United States District Court for the District of Maine. There is no dispute about the following facts.

On May 21, 1952, and for about ten years prior thereto, the plaintiff-appellant was employed by the defendant-appellee as a trackman or "section hand." About six o'clock in the morning of the day mentioned he reported for work as usual at the car house and tool shack in Millinocket, Maine, which served as headquarters for his gang. The day was cold and rainy and when he arrived a hot fire was burning in the "potbellied" wood

[1]. 45 U.S.C.A. § 51 et seq.

burning stove used to heat the place. In the shack at the time was the motor driven car used to transport the crew over the rails to and from work, and various tools and supplies such as spikes and similar items including two one-gallon cans of kerosene used for lighting lanterns and flares and starting fires and a five-gallon can of gasoline used for fuelling the crew car. The plaintiff knew what was in the cans for he had often had occasion as part of his duties to fill them from supplies kept in an "oil-house" a short distance away.

The plaintiff with his crew left the car house for work about quarter of seven leaving a "red-hot" fire burning in the stove. They returned wet and cold about half past twelve. Some of the men immediately put more wood in the stove, and when this had been done the plaintiff picked up one of the kerosene cans and began to pour its contents into the stove. After he had "doused" the wood liberally once or twice an explosion occurred which threw him across the shack and burned him severely.

The plaintiff seasonably brought suit against the defendant in the Superior Court of the State of Maine for Penobscot County. This suit was in four counts, one of them under the Federal Employers' Liability Act, in each of which the plaintiff alleged that the defendant caused the explosion "by negligently, carelessly, and recklessly furnishing highly dangerous and explosive fuel for the fire in the stove." The case came on for trial by jury but at the close of the plaintiff's evidence the trial court granted the defendant's motion for a nonsuit. The plaintiff then appealed to the Sureme Judicial Court of Maine and that court affirmed. Lyle v. Bangor & Aroostook R. R. Co., 1954, 150 Me. 327, 110 A. 2d 584.

The Supreme Judicial Court of Maine brushed aside as mere guess or conjecture the plaintiff's evidence that the kerosene can he used might have contained a mixture of gasoline and kerosene. It said that the only direct and positive evidence was that the can contained straight kero-

sene; the testimony that it contained a mixture being only a suspicion in the minds of witnesses born of their erroneous assumption that unmixed kerosene poured liberally on a fire would not explode. This assumption, the court said, contravened well known physical laws with the result that the testimony based upon it could not be accepted as evidence.

Having concluded that on the evidence it could only be found that the can contained kerosene, and noting that kerosene was a readily available household commodity for lighting fires the propensities of which were well known to the public generally and to the plaintiff in particular who had used it for years for that purpose, the court concluded that the defendant was in no way causally negligent in having kerosene available in the car house or in failing to warn the plaintiff of the dangers incident to its use for kindling fires. It said that, on the evidence the sole cause of the explosion was the plaintiff's rash act of pouring kerosene into a stove in which to his knowledge a hot fire had been burning a few hours before. In view of this conclusion the court said there was no need to consider any possible application of the Federal Employers' Liability Act "as the issue as to the defendant's negligence would remain unchanged."

The plaintiff did not seek review of this decision by the Supreme Court of the United States on writ of certiorari. Instead he brought the instant action against the defendant in the court below to recover damages for negligence under the Federal Employers' Liability Act. The defendant moved to dismiss the action on the ground of failure to state a claim on which relief could be granted. The District Court denied the motion, and when the case came up for pretrial plaintiff's counsel stated to the court that his evidence in this action would be exactly the same as the evidence introduced at the previous trial in the Superior Court of the State of Maine. The defendant then moved for summary judgment on two grounds: 1) that the judgment of the state court precluded further litiga-

tion of the cause, and 2) that as a matter of law the plaintiff's own negligence was, as the Supreme Judicial Court of Maine had held, the sole proximate cause of his injury. The District Court granted the motion on the second ground and entered the judgment for the defendant from which the plaintiff has taken this appeal.

The plaintiff argues here, as he did in the court below, that the conclusion reached by the Supreme Judicial Court of the State of Maine is wrong and that he should be given an opportunity to present his case to a jury sitting in the United States District Court for the District of Maine. We do not consider the contention that the Supreme Judicial Court for the State of Maine erred, for we think the judgment of that court precludes the plaintiff from trying his case over again in the court below on exactly the same evidence.

■■ Maine is a common law state. As such it follows the rule that although a trial court's judgment of compulsory nonsuit is final in the sense that it is a judgment which the plaintiff can take to a higher court for review, it nevertheless is not a judgment which, even if affirmed on appeal, precludes a plaintiff by operation of the doctrine of *res judicata* from bringing another suit against the same defendant for the same cause of action. Pendergrass v. York Mfg. Co., 1884, 76 Me. 509. Am.Law Inst., Restatement, Judgments, § 53 Comment b; 2 Freeman on Judgments (Fifth Ed.) § 755. That is to say, in Maine the plaintiff's cause of action was not extinguished by or merged in the judgment of involuntary nonsuit for that judgment did not adjudicate the facts. It only adjudicated the sufficiency of the evidence introduced by the plaintiff at the trial to support a finding in his favor. Thus under Maine law the 1954 judgment in Lyle v. Bangor & Aroostook R. R. Co., supra, does not stand squarely in the way of another suit by the same plaintiff against the same defendant for the same cause of action. If in a second action the plaintiff should be "able to produce more and better evidence of his claim" Pendergrass v. York

Mfg. Co., supra, 76 Me. 513, and thus cure the defect in his evidence found fatal to his case at the first trial, he would be allowed to present his case to a jury and might perhaps prevail. But the plaintiff says that he has no "more and better evidence;" he says he wants to try his case all over again on the same evidence. In other words, he wants to retry in the court below the very issue determined against him by the Supreme Judicial Court of the State of Maine, that is, the issue of the sufficiency of his evidence to make out a *prima facie* case of the defendant's negligence under the Federal Employers' Liability Act. This he may not do, for to permit him to try that issue again would run counter to the general principle applicable in the court below and elsewhere labeled "direct" estoppel by judgment in Am.Law Inst., Restatement, Judgments § 45 Comment d, wherein it is said: "Where an issue is actually litigated and determined in an action, the determination is conclusive in every subsequent action between the parties based upon the same cause of action." See also Linton v. Perry Knitting Co., 1945, 295 N.Y. 14, 64 N.E.2d 270.

The plaintiff, as he had the right to do, litigated in the courts of the State of Maine the question of the sufficiency of all the evidence he has to warrant a finding of the defendant's negligence under the Federal Employers' Liability Act. He lost. To allow him to relitigate the same issue in any other court available to him in the hope that by shopping around he may eventually find a court somewhere which will take a different view of the adequacy of his evidence would do violence to the salutary general rule of peace quoted above from the Restatement.

The judgment of the District Court is affirmed.

MAGRUDER, Chief Judge (concurring).

I concur. This case seems to me to present a very interesting question.

There are two distinct, though not unrelated, doctrines: (1) The obliga-

tion to give "full faith and credit" to the judicial proceedings of a state court, and in particular to the judgment of the Supreme Judicial Court of Maine in Lyle v. Bangor & Aroostook R. R. Co., 1954, 150 Me. 327, 110 A.2d 584, and (2) the principles of res judicata. The obligation to give such full faith and credit is imposed upon the several states by constitutional mandate in Article IV, Section 1, of the Federal Constitution. A corresponding obligation is imposed upon the federal courts by congressional mandate in 28 U.S.C. § 1738.

This full faith and credit obligation binds the courts to give as full effect to the judgment of the Supreme Judicial Court of Maine as that judgment would have in the State of Maine. If, therefore, under the local law of Maine, the judgment of its Supreme Judicial Court affirming a compulsory nonsuit would stand as no legal barrier to the maintenance by the plaintiff of a second suit in the Maine courts on the same cause of action, then it would be no violation of the full faith and credit obligation for a federal court to entertain a second suit on such cause of action.

But the judicially formulated principles of res judicata are something else again. It is important to note that the cause of action sued on here, though the complaint might be filed either in a state court or in a federal court, is wholly created by federal law, that is, the Federal Employers' Liability Act. There does not even exist any diversity of citizenship between the parties, though if such diversity did exist this would have been wholly coincidental and would not have transformed the case into a typical diversity of citizenship case. The substantive law to be applied to determine this case is federal law, to be formulated by the federal courts and ultimately by the Supreme Court of the United States, whatever might be the local law of Maine as to the effect, in Maine, of a compulsory nonsuit. See our discussion in Moore-McCormack Lines, Inc., v. Amirault, 1 Cir., 1953, 202 F.2d 893, 896–897. Since this is an action under the Federal Employers' Liability Act, the federal law must be looked to in order to determine the applicable principles of res judicata, and to determine the extent to which res judicata is available as a defense to the action. That would be true even if the forum selected for bringing such an action is a state court. Determination of the state court not to bar the action on a defense of res judicata would not be binding as a matter of local law on the Supreme Court of the United States if it should choose to review the case on certiorari; the latter court in such a situation would be free to take its own view as to the availability of res judicata as a defense to the federal cause of action. See Garrett v. Moore-McCormack Co., Inc., 1942, 317 U.S. 239, 63 S.Ct. 246, 87 L.Ed. 239.

In this case there is no disagreement as to what happened in the state court in the prior action. The plaintiff presented his evidence, at the conclusion of which the defendant moved for an order of nonsuit. This called for a judicial act and determination on the part of the trial judge, and his disposition of the motion depended upon whether, in his view, the plaintiff had shown enough to entitle him to a jury verdict on the issue of defendant's negligence. The trial judge thought not, and entered the order of nonsuit. When this order came before the Supreme Judicial Court for review, that court had the same question before it. That question is commonly said to be a "question of law," since it is one for the court to decide; nevertheless, it really calls for the exercise of a factual judgment. See Marshall v. Nugent, 1 Cir., 1955, 222 F.2d 604, 611. Plaintiff-appellant argued that he had shown enough in the trial court to go to the jury, and that the order of nonsuit was therefore an improper invasion of the province of the jury, since there was sufficient evidence of negligence upon which reasonable men might differ in their conclusions. The Supreme Judicial Court took the same view of the evidence as did the trial judge, and therefore its judicial action was to overrule the exceptions to the

order of non-suit. It could not have entered the judgment it did—a judgment which subsequently became final and not subject to further review in the Supreme Court of the United States—except upon a determination that the plaintiff's evidence, looked at in the light most favorable to the plaintiff, was insufficient to take the case to the jury.

Now the plaintiff seeks to relitigate the same issue before a different tribunal, just as though the very issue had not already been determined against him—whether rightly or wrongly—as the basis of the adverse judgment rendered by the Supreme Judicial Court of Maine in the prior case. This is contrary to the most elementary principles of res judicata, and it certainly must be deemed to be contrary to the federal law of res judicata as a defense to a suit under the Federal Employers' Liability Act.

It may be that, even if the plaintiff was prepared in the court below to offer new evidence of negligence not already presented to the Maine courts, we might have to hold that the plaintiff's prior unsuccessful action in the state courts, *on the same cause of action,* precludes maintenance of the present action, on federal principles of res judicata. We do not have to decide that point in this case, since the plaintiff disclosed to the trial judge below, at a pretrial conference, that he proposed to present to the jury only the same evidence which he produced in the prior action, and had no further evidence, hoping only to obtain a different judicial determination of the issue which inevitably would be presented, namely, whether the plaintiff had produced enough evidence entitling him to go to the jury. The proper disposition of this case, therefore, seems to me to be crystal-clear, whatever doubts I might entertain had the plaintiff sought to present to the federal court other evidence of negligence the force of which had not already been considered and passed upon by the state courts. Cf. Linton v. Perry Knitting Co., 1945, 295 N.Y. 14, 64 N.E. 2d 270.

There remains a possible question of federal procedure. In Rule 8(c) of the Federal Rules of Civil Procedure, 28 U.S.C.A., res judicata is included as one of the affirmative defenses to be set forth affirmatively by a defendant in his answer. The defendant did that in his original answer to the complaint filed in the court below. This answer set forth four defenses. The first defense stated that the complaint "fails to state a claim against defendant upon which relief can be granted." The second was a general denial of the material allegations. The third pleaded that the action is res judicata because of the earlier final decision rendered by the Supreme Judicial Court of Maine upholding the involuntary nonsuit. The fourth, which was later abandoned, is now irrelevant. In a pretrial conference memorandum, the district court recites: "The defendant deleted entirely the third and fourth defenses from its Answer. It relies merely upon the first and second defenses." At the pretrial conference it was also disclosed to the district judge that the plaintiff had already suffered an adverse determination in the state courts in an action in all respects identical to the cause of action now sought to be maintained before the federal court. Thereafter defendant made a motion, and amended motion, for summary judgment, stating that there was no genuine issue as to any material fact, since the Supreme Judicial Court in the earlier case had determined that the plaintiff's own negligence was the sole proximate cause of his injuries, and since, as recited in the pretrial order, the plaintiff had no additional evidence to be presented in the pending action. Upon consideration of this motion, the district judge granted summary judgment in favor of the defendant. It seems to me that there was no procedural error in this, despite the fact that at the pretrial conference the defendant had specifically (and I think unnecessarily) deleted from its Answer the so-called third defense of res judicata. In this connection the district judge stated in his opinion: "The motion for summary judgment, as amended, is in effect based

upon the failure of the plaintiff to state a claim upon which relief can be granted. Ordinarily, a failure to state a claim is determined upon the complaint alone. In this case, however, the parties have submitted the record of the state court proceeding and the brief filed by the plaintiff with the Supreme Judicial Court of Maine, and according to Rule 12(b) when matters outside the pleading are presented to and not excluded by the court, this defense may be determined upon a motion for summary judgment."